NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
ALI RILEY,                                  :
                                            :
                    Petitioner,             :        Civil Action No. 10-2087 (JAP)
                                            :
        v.                                  :
                                            :        **OPINION**
UNITED STATES OF AMERICA,                   :
                                            :
                    Respondent.             :
_____    :

PISANO, District Judge.

Before the Court is Petitioner, Ali Riley's ("Riley" or "Petitioner") *pro se* motion to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Respondent, United States

of America ("Government"), has filed an answer in response to Riley's motion. As permitted by

Federal Rule of Civil Procedure 78, the Court resolves this motion without oral argument. For

the reasons set forth below, the Court denies Petitioner's motion.

### I. Background and Procedural History

On March 6, 2006, at approximately 2:00 a.m., two Newark, New Jersey police officers

assigned to the auto-theft task force activated their lights and sirens, after radioing other task

force members of their intention to effectuate a traffic stop, when they observed a burgundy

Mercury with tinted windows and no license plates, both state motor vehicle violations. Rather

than pulling over, the Mercury accelerated into a Cadillac parked under a street light on the right

side of the road. The officers stopped behind the Mercury to prevent the driver from backing up.

As one officer exited the passenger side of the patrol car, he observed Riley get out of the

crashed vehicle and nearly fall to the ground. When Riley stumbled, the officer saw a gun fall

from Riley's waistband. As this officer recovered the gun, the officer who had been driving the

patrol car pursued Riley on foot. While he chased Riley down an alley on the right side of a

house, an officer who had arrived subsequently ran down an alley on the left side. A group of

officers from the task force restrained Riley behind the building. Riley was then brought back to

the original patrol car and placed under arrest. This sequence of events, from the time the officers

saw Riley exit the Mercury until he was apprehended, took less than thirty seconds.

On June 5, 2006, Petitioner Riley was charged in a one-count indictment with unlawful

possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1).[1] On September

12, 2007, after a two day trial, the jury returned a guilty verdict. This Court sentenced Riley to 92

months imprisonment on June 11, 2008. Petitioner submitted a timely Notice to Appeal to the

Court of Appeals for the Third Circuit, and on February 20, 2009 a Federal Rule of Appellate

Procedure Rule 10(e) hearing was held to expand the record for appellate review. On July 9,

2009 the Third Circuit Court of Appeals sustained this Court's ruling and the conviction. *United

States v. Riley*, 336 Fed. App'x 269, (3d Cir. 2009), *cert. denied*, 130 S. Ct. 1034.

Riley premised his appeal solely on the allegation that improper communication between

the jury and the undersigned entitled him to a new trial. Fifteen minutes after the jury retired to

deliberate, it requested an incident report from the Newark Police Department that had been

discussed at trial. Defense counsel suggested that the reply be written on the back of the note.

---

[1] The indictment read: On or about March 6, 2006 in Essex County (Newark), in the
District of New Jersey, and elsewhere, having been convicted of a crime punishable by
imprisonment for a term exceeding one-year in the State of New Jersey, did knowingly possess
in and affecting commerce a firearm in violation of 18 U.S.C. § 922(g).

Soon after this response was delivered, the jury sent out a second note again asking for the

incident report. The undersigned then entered the jury room and explained to the jurors that they

could not have the report as it was not in evidence. The jury returned its verdict soon after. The

Third Circuit found that this was a harmless error and that the record demonstrated no reasonable

possibility the exchange prejudiced the jury.

Riley's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence was

received on April 26, 2010. The Government filed an Answer on July 15, 2010, to which Riley

replied on August 5, 2010. This Court granted Riley's motion for leave to file an amended

petition pursuant to Rule 15 of the Federal Rules of Civil Procedure on June 7, 2011. Following

the general mandate to construe the pleadings of *pro se* litigants liberally, *see Dluhos v.

Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003), Riley's amended petition appears to supplement

rather than replace his original petition.

## II. Standard of Review Under § 2255

A prisoner in federal custody may file a motion in the trial court challenging the validity

of his sentence. 28 U.S.C. § 2255; *Morelli v. United States*, 285 F. Supp. 2d 454, 458 (D.N.J.

2003). A sentence shall be deemed unlawful if it was: (1) imposed in violation of the

Constitution or laws of the United States; (2) imposed by a court lacking jurisdiction; (3) in

excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28

U.S.C. § 2255. Habeas corpus relief is available to "protect against a fundamental defect which

inherently results in a complete miscarriage of justice or an omission inconsistent with the

rudimentary demands of fair procedure. Accordingly, petitioner must establish that such an event

has occurred in order to be successful on his claim." *United States v. Deluca*, 889 F.2d 503, 506

(3d. Cir. 1989).

A defendant has one year in which to file a request for habeas relief under § 2255. 28 U.S.C. § 2255(f). This period runs from the latest of four specified events, one of which is the date on which the judgment of conviction becomes final.[2] 28 U.S.C. § 2255(f)(1)-(4). A conviction becomes final when the United States Supreme Court denies a petition for a writ of certiorari, *see Clay v. United States*, 537 U.S. 522, 527 (2003), which occurred on December 14, 2009. Riley's initial § 2255 motion was timely filed on April 27, 2010.

### III. Legal Discussion

Riley makes three claims for relief, arguing that (A) the felon-in-possession statute, 18 U.S.C. § 922(g)(1), is unconstitutional; (B) his conviction was obtained in violation of Rule 43 of the Federal Rules of Criminal Procedure because he was not present when the court and counsel discussed and answered questions from the jury; and (C) he was deprived of effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Additionally, Riley asks that an evidentiary hearing be held to assess the veracity of his claims and that these proceedings be stayed while he challenges the state convictions that served as the basis for his current sentence under 18 U.S.C. § 922(g)(1).

---

[2] The remaining three events are:

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such government action;

> (3) the date on which the right asserted was initially recognized by the Supreme court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

### A. Constitutionality of 18 U.S.C. § 922(g)(1)

Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citations omitted); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993). Though this general rule is neither a statutory nor constitutional requirement, it is "adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. Riley did not question the constitutionality of 18 U.S.C. § 922(g)(1) on direct review by the Third Circuit Court of Appeals. Here, the Court finds no need to engage in a "cause and prejudice" procedural default analysis as Riley's argument fails on its merits when reviewed under Supreme Court and Third Circuit precedent. *See Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977) (explaining that cause and prejudice exception to default rule is meant to allow courts to adjudicate for the first time federal constitutional claims of defendants in order to avoid miscarriages of justice).

Riley argues that 18 U.S.C. § 922, which prohibits a convicted felon from possessing a firearm that has traveled in or otherwise affected interstate commerce[3], is unconstitutional after the Supreme Court's holdings in *United States v. Lopez*, 514 U.S. 549 (1995), *Jones v. United States*, 529 U.S. 848 (2000), and *United States v. Morrison*, 549 U.S. 598 (2000). Pet'r's Mem. at 3. The Third Circuit, however, evaluated the constitutionality of § 922(g)(1) in light of this trinity of Supreme Court decisions in *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001),

---

[3] The statute provides, in relevant part, that:

(g) It shall be unlawful for any person-

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922 (g)(1).

*cert. denied*, 535 U.S. 976 (2002). As in the present case, the petitioner in *Singletary* contended

that the intrastate possession of a firearm, as proscribed by § 922(g)(1), does not have a

substantial effect upon interstate commerce and therefore is not a valid exercise of Congressional

authority under the Commerce Clause. *Singletary*, 268 F.3d at 197. The Third Circuit upheld §

922(g)(1), noting that it had already found the statute to be constitutional soon after the *Lopez*

decision and that neither *Morrison* nor *Jones* give reason to alter this holding. *Id.* at 205. The

court noted that the jurisdictional element contained in § 922(g)(1) distinguished it from the

statutes struck down in *Lopez* and *Morrison*[4], and that the issues addressed in *Jones* provide "no

further insight" when interpreting gun possession statutes. *Id.* at 204. As such, the established

precedent of this circuit makes clear that § 922(g)(1) does not represent a sufficient constitutional

affront to carry a 28 U.S.C. § 2255 collateral attack.

**B. *Ex parte* Communication at Trial**

Riley also argues that his sentence is unlawful based on *ex parte* communication that

occurred between the undersigned and jury during his trial. Pet'r's Mem. at 21-22. Riley raised

this same issue on appeal. There, the Third Circuit acknowledged that "[t]he parties agree that

the manner in which the District Court responded to the jury's second note constitutes a violation

of Federal Rule of Criminal Procedure 43 and the constitutional rights advanced by that rule."

*United States v. Riley*, 336 Fed. App'x 269, 271 (3d Cir. 2009). However, the Third Circuit

affirmed the conviction because, after subjecting Riley's claim to harmless error review[5], it

---

[4] The Third Circuit stated that "while *Lopez* and *Morrison* were questions concerning the power of Congress to regulate activities substantially affecting interstate commerce, § 922(g)(1) regulates possession of goods moved in interstate commerce . . . . Section 922(g)(1), by its very terms, only regulates those weapons affecting interstate commerce by being the subject of interstate trade." *Singletary*, 268 F.3d at 204.

[5] Under this standard, "the Government must prove beyond a reasonable doubt that the defendant was uninjured by the error . . . [i.e., that] there [was] 'no reasonable possibility of prejudice'." *United States v. Toliver*, 330 F.3d 607, 613-15 (3d Cir. 2003) (quoting *United States*

found that the record showed no reasonable possibility of prejudice. *Riley*, 336 Fed. App'x at

271. As the Third Circuit has already ruled on this issue, Riley cannot relitigate this claim as part

of his § 2255 motion. *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993)

(observing that courts have generally held that petitioners cannot use § 2255 motions to relitigate

claims already rejected on direct appeal).

Relatedly, Riley claims that his counsel was ineffective for not objecting to the verbal

answer given to the jury because he "was prejudiced by the Court's *ex parte* communication."

Pet'r's Mem. at 24. Riley's ineffective assistance of counsel arguments are addressed more fully

below, and it is sufficient here to note that the Third Circuit's ruling that Riley was not

prejudiced by the *ex parte* communication means that this related claim fails to meet the

"prejudice" prong of the ineffective counsel test. *See Strickland*, 466 U.S. at 687. That is, as the

Third Circuit found the *ex parte* communication to be harmless, counsel's failure to object to it

cannot amount to a violation of Riley's Sixth Amendment rights to be present during his criminal

proceeding or to effective counsel.

### C. Ineffective Assistance of Counsel

Finally, Riley argues that he received ineffective assistance from his appointed counsel,

in violation of the Sixth Amendment. Pet'r's Mem. at 7-8. Riley argues four points to support

this final claim: (1) counsel was ineffective for failing to argue that the Government had not

established beyond a reasonable doubt the firearm in question travelled in interstate commerce;

(2) counsel was ineffective for not moving into evidence the police reports used to impeach or

question the credibility of testifying police officers; (3) counsel was ineffective for failing to

---

*v. Allessandrello*, 637 F.2d 131, 139 (3d Cir. 1980)). The Third Circuit observed that the
instruction given to the jury was substantially similar to what it had received in written form only
minutes earlier in the presence of counsel, rendering the error harmless. *Riley*, 336 Fed. App'x at
271 (citing *United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir. 1992)).

object on chain of custody grounds to the introduction of the handgun recovered by the Newark

Police Department; and (4) counsel was ineffective for failing to argue that for the admittance of

the police reports when they were requested by the jury during deliberations. Pet'r's Mem. at 2-

25.

The Supreme Court announced the two-pronged standard for evaluating ineffective

assistance of counsel claims in *Strickland*, 466 U.S. at 686-87 (1984). Unless the petitioner

makes showings for both prongs, "it cannot be said that the conviction . . . resulted from a

breakdown in the adversary process that renders the result unreliable." *Id.* at 687. First, the

petitioner must show that the counsel's performance "fell below an objective standard of

reasonableness." *Id.* at 687-88.  Second, the petitioner must show that the deficient performance

prejudiced the defense. *Id.* at 687. To demonstrate prejudice, the petitioner "must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* In evaluating both prongs of the test, the court "must

indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id.* at 688. The petitioner, therefore, must overcome this presumption

that the challenged action might be considered sound trial strategy. *Id.* at 689. In order to fairly

evaluate an attorney's performance, every effort must be made to "eliminate the distorting effects

of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

the conduct from counsel's perspective at the time." *Id.*

First, Riley claims that his counsel was ineffective for not arguing that the Government

had not established that the firearm in question traveled in interstate commerce. Pet'r's Mem. at

9. Specifically, Riley argues that his counsel should have objected when Special Agent Dennis

Wagner of the Bureau of Alcohol, Tobacco, Firearms, and Explosives used the phrase "I

believe" when describing when the manufacturer of the firearm in question went out of business. Pet'r's Mem at 10. Riley's counsel, however, did not act unreasonably by not directly arguing that the firearm recovered from the scene had not been proven to have traveled in interstate commerce. The use of the phrase "I believe" by Special Agent Wagner, who had already testified to having trained as an interstate nexus expert at the National Tracing Center, Trial Tr. 292:6-12, did not signal a digression into unsubstantiated opinion. Counsel had, in fact, already objected to the possibility of Special Agent Wagner answering any questions that did not specifically pertain to the recovered firearm. *Id*. at 294:23-25. Riley's counsel also never conceded that the gun had in fact traveled in interstate commerce, despite Special Agent Wagner's testimony that "Made in Spain" and "LLAMA" were stamped on the gun, that LLAMA manufactured guns in Spain until 2005, and that LLAMA never manufactured guns in New Jersey. *Id.* at 296:2-7, 297:9-11. Given the strong presumption of reasonableness ascribed to counsel's trial strategy decisions, *Strickland*, 466 U.S. at 688, and that the Government had only to show that the firearm had traveled in interstate commerce at some time in the past, *United States v. Singletary*, 268 F.3d 196, 205 (2001), counsel's decision not to make the interstate element of the offense a focal point of her strategy does not violate the reasonableness prong of the *Strickland* test.

Second, Riley argues that his counsel was ineffective for not moving the incident report into evidence pursuant to Federal Rule of Evidence 803(8)(c). Pet'r's Mem. at 15-16. Riley claims that counsel's decision not to introduce the report into evidence cannot be considered a reasonable strategic choice and that he was irreparably prejudiced by the jury's inability to view the report while deliberating. Pet'r's. Am. Mem. at 25, 31. However, Riley's argument fails to satisfy either the first or second prongs of the *Strickland* test. While the defense focused on highlighting contradictions between the brief incident report and the police officers' testimony

during trial, there are objectively reasonable explanations as to why she may have chosen not to

introduce the report into evidence. *See Bell v. Cone*, 535 U.S. 685, 700-02 (2002) (stating

defense counsel had sound tactical reasons, such as not wanting to provide jury with more

evidence of client's criminal behavior, to rely on jurors' familiarity with case rather than call

certain witnesses and deliver closing argument). As the Government notes, counsel was able to

draw out inconsistencies from the officers during cross-examination and may not have wanted to

give jurors a document that merely reinforced the main points made by each testifying Newark

Police Department officer. Gov't's Answer at 11. The Court must indulge in a strong

presumption that counsel's decisions at trial fall within the wide scope of reasonable professional

assistance. *Strickland*, 466 U.S. at 688.

Likewise, Petitioner was not prejudiced by the jury's inability to obtain the police report

to any degree severe enough to meet the "highly demanding" standard outlined in *Strickland*.

*Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). Riley argues that, based on an exchange

between the court and his counsel, the latter did not know that the jury could not receive the

report if it had not been introduced into evidence. Pet'r's Am. Mem. at 31; Trial Tr. 448:11-16.

Even if Riley's counsel did not strategically choose to withhold the incident report, Riley still has

not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland*, 466 U.S. at 687. Officers

testified that incident reports are written only as brief synopses, Trial Tr. 159:5-6, 204:20-23,

meaning that the jury would have received the document knowing that it only detailed a portion

of what was observed. There is insufficient evidence to suggest that the jurors would have found

Riley not guilty had they possessed the report, the contents of which had already been discussed

at length in their presence during the two day trial. Defense counsel did not move the police

10

report into evidence, but this was neither unreasonable nor ultimately prejudicial towards Riley's

case under the *Strickland* standard.

Third, Riley argues that his counsel was ineffective for not objecting to the introduction

of the recovered handgun into evidence and for not arguing that the gun had been tampered with

while in storage. Pet'r's Mem. at 18-19. These arguments again fail to meet either prong of the

*Strickland* test. The Third Circuit has explained that "[t]o establish a chain of custody, the

government need only show that it took reasonable precautions to preserve the evidence in its

original condition, even if all possibilities of tampering are not excluded. Absent actual evidence

of tampering, a trial court may presume regularity in public officials' handling of contraband."

*United States v. Dent*, 149 F.3d 180, 188-89 (3d Cir. 1998) (citations omitted). Additionally,

fingerprint evidence is not necessary to prove possession of a firearm when other circumstantial

evidence exists. *See United States v. Moore*, 208 F.3d 411 (2d Cir. 2000). Riley premises his

argument on the fact that when a fingerprint expert inspected the gun, his report noted the

evidence storage bags were open. Riley contends that this amounts to sufficient proof of

"untrustworthy" police behavior that his counsel should have objected to before and during the

trial. Pet'r's Am. Mem. at 19. However, the gun recovered at the scene, processed by the

fingerprint expert, and then presented at trial bore the same serial number. This expert testified to

the exceptional rarity of detecting fingerprints on firearms and expressed his lack of surprise in

not finding any on the LLAMA handgun. Trial Tr. 282:23, 284:14. Considering the evidence

presented and relevant case law, Riley's counsel's decisions not to question the chain of custody

of the gun or to suggest during cross-examination that the Newark Police Department had

suspiciously handled the weapon are examples of reasonable trial strategy. Objecting to the

introduction of the gun into evidence may instead have undermined the defense's overall

credibility with the jury. *See Goins v. Lane*, 787 F.2d 248, 254 (1986) ("It goes without saying that trial counsel may undermine the credibility of the defense of his client if he simply presents the court with a barrage of attacks. The strength of meritorious arguments is dissipated by the weakness of groundless ones.")

Fourth, Riley argues that his counsel was ineffective for not arguing for the admittance of the police report into evidence following the jury's request for it during deliberations. This last ineffective assistance of counsel argument also fails under *Strickland*'s two prongs. The jury could not have the report as it had not been admitted into evidence. Riley's counsel, therefore, did not act unreasonably by not asking the court to make a special exception. The defense counsel may or may not have made the strategic decision to withhold the report from the jury, but there is no evidence to suggest that the jury's possession of the report would have led to a not-guilty verdict. *See Strickland*, 466 U.S. at 694 (1984) (stating petitioner must show reasonable probability that, but for counsel's unprofessional errors, result of proceeding would have been different, and that reasonable probability is probability sufficient to undermine confidence in outcome). A review of the record shows that counsel's performance, afforded the presumption of being part of a sound trial strategy, does not exist as a "but for" cause of Riley's conviction and did not violate Riley's right to effective assistance of counsel.

### D. Evidentiary Hearing

Riley posits that an evidentiary hearing must be held to determine the truthfulness of the allegations he makes in his 28 U.S.C. § 2255 motion. Pet'r's Mem. at 3. The decision as to whether to order such a hearing on a claim of ineffective assistance of counsel is committed to the sound discretion of the district court. *Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984), *cert. denied*, 469 U.S. 829 (1984). Where the petitioner raises no genuine issues of

12

material fact, the court need not hold an evidentiary hearing. *Essig*, 10 F.3d at 976 (3d Cir.

1993). Likewise, "[i]f a nonfrivolous claim clearly fails to demonstrate either deficiency of

counsel's performance or prejudice to the defendant, then the claim does not merit a hearing."

*United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988). As discussed above, Riley has

neither shown that his counsel's representation was constitutionally deficient nor that he was

prejudiced by his counsel's performance. Riley raises issues of law and none of material fact.

Therefore, an evidentiary hearing on this motion is not necessary.

### E. Petitioner's State Post-Conviction Motions

Riley has informed the Court that, in order to avoid the limitation period set out in 28

U.S.C. § 2255 ¶ 6(4), he has filed motions in New Jersey state court challenging his three prior

state convictions. Pet'r's Am. Mem. at 33. These convictions served as the basis for Riley's

subsequent conviction under 18 U.S.C. § 922(g). Riley asks the Court to "suspend or abate

proceedings . . . until State post-conviction motions are determined." *Id.* In discussing the effect

any vacatur would have upon his conviction under § 922(g), Riley concedes that "[a]s the post-

conviction petitions are not yet final, the issue herein is not yet ripe." *Id.* As correctly indicated

by this assertion, the Court is unable to evaluate the validity of Riley's challenge to his state-

level convictions under the "due diligence" standard outlined by the Supreme Court in *Johnson*

*v. United States*, 544 U.S. 295 (2005). However, regarding Riley's request that this Court wait

until state post-conviction motions are determined before ruling, "[t]he decision to grant or deny

a motion to stay proceedings is left to the sound discretion of the court, in light of the particular

circumstances of the case." *United States v. Stover*, 576 F. Supp. 2d 134, 146 (D.D.C. 2008)

(citation omitted). Here, Riley does not present any compelling arguments as to why a stay

should be granted or why his state court challenges may succeed. According to the Supreme

Court:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging
> finality by allowing a petitioner to delay the resolution of the federal proceedings.
> It also undermines AEDPA's goal of streamlining federal habeas proceedings by
> decreasing a petitioner's incentive to exhaust all his claims in state court prior to
> filing his federal petition.

*Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, while Riley is correct in asserting his

right to have his sentence under 18 U.S.C. § 922(g) revisited following a hypothetical future

vacatur of his state-level convictions, this Court will not use its discretion to stay proceedings

before those motions are determined.

**III. Conclusion**

For the foregoing reasons, Riley's motion to vacate, set aside, or correct his sentence

under 28 U.S.C. § 2255 is denied. The Court further finds that no certificate of appealability will

issue because Petitioner has not made a substantial showing of the denial of a constitutional right

as required by 28 U.S.C. § 2253(c)(2). An appropriate order follows.

/s/ JOEL A. PISANO
United States District Judge

Dated: July 28, 2011

14